UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MAXIMILIAN STANTON,

                                    Plaintiff,

              v.

BUCHANAN MARINE, L.P. and A.P. FRANZ, JR. Trustee,

                                    Defendants.

**MEMORANDUM & ORDER**

08 Civ. 9713 (LBS)

SAND, J.,

Plaintiff Maximilian Stanton moves this Court for an order declaring invalid the provision of the Collective Bargaining Agreement ("CBA") between Defendant Buchanan Marine L.P. and the Local 333 United Marine Division, I.L.A., AFL-CIO union limiting maintenance payments to ninety consecutive days regardless of whether an injured seaman has reached maximum medical recovery. For the following reasons, Plaintiff's motion is denied.

**I. Background**

On June 29, 2008, Plaintiff was injured aboard the tug boat "Mister T" while he was employed as a seaman and a member of the tug's crew.[1] Plaintiff alleges that he was injured while jumping between barges during the course of duty. (Pl. Reply Decl., Ex. 1.) Plaintiff asserts that he injured his right ankle during the incident. Plaintiff sought medical attention after the incident. On March 25, 2009, Plaintiff underwent an operation for his injury. (Pl. Reply Decl., Ex. 4.) As of the date of this Order, the record indicates that no doctor has opined that Plaintiff has reached maximum medical recovery.

---

[1] Plaintiff was a member of the Local 333 union at the time of the incident and remains a member to date.

Plaintiff has been unable to work since the incident that caused his injury. From the date of the incident through September 27, 2008, a ninety-day period, Defendant Buchanan Marine paid Plaintiff maintenance at a rate of thirty dollars per day. These payments were made pursuant to Section 13.6 of the CBA. Plaintiff has requested additional maintenance payments since September 27, 2008 from Buchanan Marine, however, Buchanan Marine has declined to grant Plaintiff's request. Buchanan Marine asserts that it has no obligation to make any maintenance payments beyond what is required by the CBA. Plaintiff asserts that Buchanan Marine has a federal maritime common law obligation to make maintenance payments to Plaintiff until Plaintiff is deemed to have reached maximum medical recovery, regardless of the maintenance provisions in the CBA. Plaintiff thus moves this Court to declare invalid Section 13.6 of the CBA, which limits the obligation to pay maintenance to ninety consecutive days regardless of whether an injured seaman has reached maximum medical recovery.

## II. Discussion

Under general maritime law of the United States, a vessel owner has a duty to provide maintenance to a seaman who falls ill or becomes injured while in the service of the vessel, *Calmar S.S. Corp. v. Taylor*, 303 U.S. 525, 528 (1938); *The Osceola*, 189 U.S. 158, 175 (1902), until the seaman reaches maximum medical recovery, that is, when he has recovered or his condition is declared permanent and incurable. *Vaughan v. Atkinson*, 369 U.S. 527, 533 (1962). The duty "derives from the unique hazards which attend the work of seamen, and fosters the combined object of encouraging marine commerce and assuring the well-being of seamen." *Vella v. Ford Motor Co.*, 421 U.S. 1, 3–4 (1975). Historically, the duty to provide maintenance required the vessel owner to provide food and lodging comparable to that received aboard the vessel. *Ammar v. United States*, 342 F.3d 133, 142 (2d Cir. 2003). The right to maintenance

2

arises out of the contractual employment relationship.  However, as the Supreme Court noted in *Vaughan v. Atkinson*, this judicially created right fashioned to protect "seamen, who as a class, [were] poor, friendless and improvident, . . . differs from rights normally classified as contractual" because it is non-waivable.  369 U.S. at 532.

Several circuit courts have recently addressed the contours of the right to maintenance against a backdrop of a current "national policy . . . built on the premise that employees can bargain most effectively for improvement in wages, hours, and working conditions by pooling their economic resources and acting through freely chosen labor organizations." *Ammar*, 342 F.3d at 143 (citing *NLRB v. Allis-Chalmers Mfg. Co.*, 388 U.S. 175, 180 (1967)).  Specifically, these courts have considered whether it is permissible for a collective bargaining agreement to alter the maintenance duty by establishing a maintenance rate less than the actual cost of food and lodging for the unionized seaman on the vessel.  *E.g.*, *Frederick v. Kirby Tankships, Inc.*, 205 F.3d 1277, 1292 (11th Cir. 2000); *Baldassaro v. United States*, 64 F.3d 206, 212–13 (5th Cir. 1995); *Barnes v. Andover Co., L.P.*, 900 F.2d 630, 640 (3d Cir. 1990); *Al-Zawkari v. Am. S.S. Co.*, 871 F.2d 585, 588 (6th Cir. 1989); *Macedo v. F/V Paul & Michelle*, 868 F.2d 519, 522 (1st Cir. 1989); *Gardiner v. Sea-Land Serv. Inc.*, 789 F.2d 943, 949–50 (9th Cir. 1986).  In *Ammar v. United States*, the Second Circuit concurred with the majority of circuits in permitting a collective bargaining agreement to limit the per diem rate of maintenance.  *Ammar*, 342 F.3d at 146.  The Second Circuit's ruling was based, in part, on its conclusions that the agreement seemed to be the product of legitimate negotiation and that the limitation on the maintenance duty was part of an exchange for other compensation and benefits.  *Id.*  In upholding the agreement to pay an eight dollar maintenance per diem, the Second Circuit instructed that contracted-for maintenance per diems in collective bargaining agreements should be considered

in light of the entire package of benefits and compensation reflected in the agreements.  *Id.*  The Second Circuit also instructed that deference should be accorded to such agreements so long as the agreement at issue is the result of legitimate negotiation.  *Id.*

The case before this Court presents a different issue from *Ammar*: Whether it is permissible for a collective bargaining agreement to limit the duration of maintenance payments to a term shorter than maximum medical recovery.  In light of the general principle that maintenance be continued until the seaman has reached maximum medical recovery, which can be a lengthy period of time for certain injuries, the Court is mindful that bargaining agreements that contain limitations of duration on maintenance present unique opportunities for employers to limit their duty to provide maintenance until it is effectively eliminated.

In determining whether an agreement to limit duration of maintenance is permissible, the Court starts its analysis by recognizing the common law rule that a collective bargaining agreement cannot eliminate the duty to provide maintenance altogether.  *Id.* at 142.  However, we also recognize that through collective bargaining agreements, unionized seamen may accept less than full maintenance in exchange for other benefits and compensation.  *Id.* at 146.  In determining whether such limitations are permissible, the Court will look to the entire package of benefits and compensation and not to any provision of the bargaining agreement in isolation.  *Id.*

Considering the entirety of the CBA and the pleadings, it is plain that the limitation of maintenance payments to ninety days is the product of legitimate negotiation and was agreed to as part of an exchange for other compensation and benefits.  To start, the thirty dollar maintenance per diem in the CBA, although limited to a ninety-day period, is a one hundred percent increase from the fifteen dollar maintenance per diem that was paid to Local 333 seamen under the previous contract.  (*See* Jurczak Decl. ¶ 7.)  It is also considerably higher than the eight

4

dollar per diem that was upheld in *Ammar*.  The CBA includes other provisions that benefit the unionized seamen as well, including provisions relating to compensation and wage increases (CBA §§ 10.1, 10.3, 10.5), overtime (CBA § 10.9), reimbursement for food (CBA §§ 10.10, 10.11), holidays and related pay (CBA §§ 11.1, 11.3), seniority (CBA §§ 12.1, 12.6, 12.7), medical and dental benefits (CBA §§ 13.1, 13.2, 13.3), retirement benefits (CBA § 14.1), living provisions on board the tugs (CBA § 15.4), reimbursement for carfare (CBA § 15.6), reimbursement for COBRA insurance premiums (CBA § 15.7), tuition reimbursement (CBA § 15.8), and an efficient grievance procedure (CBA §§ 8.1, 8.2).

Moreover, the CBA contains a provision for long term disability insurance ("LTD") for those seamen who have sustained longer term injuries.  (CBA § 13.4.)  The LTD policy is a contributory policy; the employer and the member collectively pay the premiums.  The LTD policy provides benefits in the amount of sixty percent of a seaman's pre-disability earnings beginning ninety days after maintenance ends.  Plaintiff elected to participate in Buchanan Marine's LTD insurance plan on July 23, 2007 and made contributions through payroll commencing August 1, 2007.  (Colacino Decl. ¶ 5.)  When the accident giving rise to the instant claim occurred on June 29, 2008, Plaintiff was a member of Buchanan Marine's LTD plan and eligible for benefits thereunder.  (Colacino Decl. ¶ 6.)  All of the provisions discussed above must be considered as part of the give and take process that resulted in the ninety-day maintenance limitation.

In addition to finding that the limitation on the duration of maintenance was the result of legitimate negotiation, we also find that the CBA does not have the effect of eliminating the duty to provide maintenance.  *Cf. Vaughan v. Atkinson*, 369 U.S. 527, 532 (1962).  In light of the doubling of the maintenance per diem for the first ninety days from the previous contract and the

provision providing LTD insurance beginning ninety days after the maintenance ends, we find that the contract does not effectively eliminate the vessel owner's duty to provide maintenance. The Court takes particular note of the fact that, had Plaintiff applied for his LTD benefits, he would have been eligible to collect sixty percent of his $4,454 month salary, or approximately $2,672 per month.  (Colacino Decl. ¶ 9.)

Plaintiff argues that the Court should not consider the LTD insurance provision when determining the permissibility of a ninety-day limitation on maintenance payments because Defendant cannot guarantee that such insurance will be paid by the insurance company.  We find Plaintiff's argument unavailing when applied to the facts of this case.  To date, Plaintiff has not applied for any LTD benefits.  Plaintiff was injured on June 29, 2008 and retained counsel within one month of his injury.  Had Plaintiff applied for his LTD benefits, which would have required him to complete four forms for the insurance company to evaluate, Plaintiff would have been eligible to receive LTD benefits as early as December 26, 2008.  Even after Plaintiff discontinued paying his share of the insurance premium in June 2009, Defendants continued to pay Plaintiff's premium contribution for several months.  (Colacino Decl. ¶¶ 2, 3.)  Moreover, the insurance policy has a "Wavier of Premium" section that states that the LTD insurance "will continue without premiums while LTD benefits are payable."  (Def.'s Letter of May 11, 2009, Ex. A.)  Plaintiff has set forth no reasoning that supports the conclusion that insurance benefits may not be paid.  In addition to failing to apply for the benefits prior to making this motion, Plaintiff makes no argument as to why his injury may not fall within the definition of "Disability" as defined by the policy or why he might be deemed to have a preexisting condition.

The Court's analysis would not reach cases where the duration of maintenance payments were limited to a time period considerably shorter than ninety days or where long-term disability

6

benefits were not available after the termination date of the maintenance payments. However, given the length and rate of the maintenance payments, the absence of a showing that LTD insurance would not be paid, and the provisions in the CBA indicating that the maintenance provision was the product of legitimate negotiation between sophisticated parties, Plaintiff's motion is denied.

The parties shall advise the Court in writing of their proposed schedule for further proceedings in this case within thirty days of this Order.

**SO ORDERED.**

Dated: August 10, 2009
New York, NY

_____
U.S.D.J